542 F.2d 883
 Thomas J. CHIARELLO, Plaintiff-Appellee-Appellant,
v.
DOMENICO BUS SERVICE, INC. and Henry Girdwood,
Defendants-Appellants-Appellees Action No. 1.
Angela CHIARELLO, Plaintiff-Appellee-Appellant,
v.
DOMENICO BUS SERVICE, INC., Defendant-Appellant-Appellee,
and
Henry Girdwood, Defendant Action No. 2.
 Nos. 97, 98, 220, 221, Dockets 76-7184-85, 76-7197-98.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 17, 1976.
Decided Oct. 14, 1976.
 
 William F. McNulty, New York City (Daniel J. Coughlin and Anthony J. McNulty, New York City, on the brief), for defendants-appellants-appellees in Action No. 1 and defendant-appellant-appellee in Action No. 2.
 Martin Lassoff, New York City (Morris Cizner, New York City, on the brief), for plaintiffs-appellees-appellants.
 Before LUMBARD, MANSFIELD and MULLIGAN, Circuit Judges.
 LUMBARD, Circuit Judge:
 
 
 1
 Defendants Domenico Bus Service, Inc. (hereinafter Domenico) and Henry Girdwood appeal from judgments entered against them on March 17, 1976 in the Southern District. On the first cause of action in this diversity case, plaintiff Thomas Chiarello was awarded the sum of $669,910. against both defendants for personal injuries sustained when a passenger bus owned by Domenico and driven by Girdwood collided with plaintiff's car on June 30, 1972, in Bayonne, New Jersey. On the second cause of action, which was jointly tried, Angela Chiarello was awarded the sum of $79,703. against Domenico for loss of consortium.[1] Defendants' primary contention on appeal is that Judge Metzner abused his discretion in his order of February 12, 1976, setting aside the jury verdicts in the first trial in favor of the defendants as against the weight of the evidence. Plaintiffs cross-appeal from the orders of the district court discounting damages for future pain and suffering and for future loss of consortium. We affirm.
 
 
 2
 The testimony in both trials in this case was substantially the same; the drivers of the colliding vehicles were the only witnesses who testified to the accident. According to Girdwood, he first saw the Chiarello car about 75 feet in front of his bus as both vehicles proceeded down an incline toward a railroad underpass on the access road leading to the Bayonne Bridge in New Jersey. Girdwood followed the Chiarello car through a pool of water about 6-9 inches deep, which had collected in a dip in the road, and continued to keep the car in view except for a moment when his vision was obscured by the dip. As Girdwood came out of the dip, he saw the brakelights of the Chiarello car. The bus was then travelling at about 20-25 miles per hour and Girdwood applied his brakes when he was about 60-75 feet from the car. The bus struck the rear of the car, which was standing still at the time, at a speed of about 7-8 miles per hour.
 
 
 3
 Chiarello testified that the impact of the collision drove his car forward into the rear of another vehicle and that the impact of this second collision propelled him upward, causing his head to strike the visor and leaving him draped over the steering wheel. As a result of the accident, Chiarello claimed to have suffered a herniated disc, scarring and adhesions of the spine, and impotency.
 
 
 4
 Plaintiffs offered testimony that a car going 20 miles per hour travels 30 feet per second. Girdwood testified that under the conditions that existed on the day of the accident, at a speed of 20 miles per hour it would take his bus 70 feet to stop. In addition, it would take the driver a half second (or 15 feet) to shift his foot from accelerator to brake.
 
 
 5
 After the jury brought in verdicts for the defendants, the plaintiffs moved to set them aside. Judge Metzner concluded that in view of the road conditions and the speed at which Girdwood was driving, defendants' bus was simply following too closely behind plaintiff's car; accordingly, he set aside the verdicts in favor of the defendants as against the weight of the evidence. We have held that if, after considering the character of the evidence and the complexity of the legal principles involved, it is clear to the trial judge that the jury has reached an erroneous result, then it is within his discretion to grant a new trial. Compton v. Luckenbach Overseas Corporation, 425 F.2d 1130, 1133 (2d Cir.), cert. denied 400 U.S. 916, 91 S.Ct. 175, 27 L.Ed.2d 155 (1970). The evidence at the first trial strongly indicated that Girdwood was negligent and on this record we cannot say the trial court abused its discretion in setting aside the verdict, Cf. Sotell v. Maritime Overseas, Inc., 474 F.2d 794, 796 (2d Cir. 1973).
 
 
 6
 Defendants also contend that the trial judge erred in failing to disqualify himself from presiding at the second trial and in failing to set aside the jury verdicts as excessive. We find both arguments lacking in merit. Defendants have at no time claimed that the trial judge harbored any personal bias or prejudice. See 28 U.S.C. § 144. The mere fact that the trial judge set aside the verdicts in the first trial as against the weight of the evidence is not sufficient ground to require disqualification. See C. Wright, Law of the Federal Courts 421 (2d ed. 1970); cf. Wolfson v. Palmieri,396 F.2d 121, 124-25 (2d Cir. 1968); Hanger v. United States, 398 F.2d 91, 101 (8th Cir. 1968), cert. denied 393 U.S. 1119, 89 S.Ct. 995, 22 L.Ed.2d 124 (1969). Further, although the verdict is generous, in view of the serious injuries suffered by Chiarello[2] (who was 35 years old at the time of the accident) we cannot say that the amount is "so high that it would be a denial of justice to permit it to stand." Dagnello v. Long Island Rail Road Company, 289 F.2d 797, 806 (2d Cir. 1961), quoted with approval in Ressler v. States Marine Lines, Inc., 517 F.2d 579, 583 (2d Cir.) cert. denied423 U.S. 894, 96 S.Ct. 193, 46 L.Ed.2d 126 (1975).
 
 
 7
 Plaintiffs assert in their cross-appeal that the trial court erred in discounting the damage awards for future pain and suffering and for future loss of consortium.[3] Pursuant to an agreement between counsel and the trial court, specific interrogatories as to the amount of various items of damage, the life and work expectancy of Thomas Chiarello, the rate of inflation, and the discount rate were submitted to the jury. The jury was charged that if they found for the plaintiffs they should answer the interrogatories, keeping in mind that the law recognized the principle that a lump sum received today is worth more than the same amount to be paid over a period of time in the future. The jury was then instructed that the court would make the computations necessary to arrive at the discounted amounts.[4]
 
 
 8
 We find that the discounting of awards for future pain and suffering and for future loss of consortium is not only appropriate but preferable.[5] It is a well-established principle that in computing damages for the loss of such benefits as future earnings, adequate allowance must be made for the earning power of money. Chesapeake & Ohio Ry. v. Kelly, 241 U.S. 485, 491, 36 S.Ct. 630, 60 L.Ed. 1117 (1916); Yodice v. Koninklijke Nederlandsche Stoomboot Maatschappij, 443 F.2d 76, 77-8 (2d Cir. 1971), cert. denied 411 U.S. 933, 93 S.Ct. 1902, 36 L.Ed.2d 393 (1973); O'Connor v. United States, 269 F.2d 578, 585 (2d Cir. 1959). Awards for future pain and suffering or for future loss of consortium, like awards for future loss of earnings, result in a lump-sum award for damages that accrue in the future. Irrespective of the type of injury involved, the advantage of the present use of money is the same and should be taken into account in arriving at the proper amount of damages. This is particularly true in cases like the present one, where it was foreseeable that the award might be substantial and could be made up largely of damages to be suffered over a long period in the future.
 
 
 9
 The district court's action in submitting interrogatories to the jury in order to determine damages and the net discount rate, but reserving to itself the necessary computations, was entirely appropriate. This practice indicates to the jury that the awards are to be discounted but lessens the possibility of error in computation. Thus, although we are aware of the presence of contrary authority,[6] we are convinced that a jury is more likely to reach an equitable result if the verdict is arrived at by a process similar to that used by the trial court, than if the jury is allowed to bring in a sum that may or may not reflect the present value of damages to be suffered over what may be a substantial period of time. Compare Taylor v. Denver and Rio Grande Western Ry., 438 F.2d 351 (10th Cir. 1971) with Oberhelman v. Blount, 196 Neb. 42 (1976), 241 N.W.2d 355, 361.
 
 
 10
 In view of the improper matter and the groundless charges in plaintiffs' brief on appeal regarding abortive attempts to settle the actions, we direct that no costs be awarded plaintiffs.
 
 
 11
 Affirmed.
 
 
 
 [1]
 The consortium action against Girdwood was dismissed because he was never served with process
 
 
 [2]
 Chiarello's evidence showed that he suffered severe and continuous pain in the neck, right shoulder, right arm, hand and lower back attributable to cervical sprain and disc protrusion of the lumbosacral area. After conservative treatment proved ineffective, a neurosurgeon was called in to perform a laminectomy. This procedure proved futile, however, and the surgeons were once again called in to perform a rhizotomy. This latter procedure involved an attempt to destroy the nerve fibres in plaintiff's spine in order to alleviate the pain; however, apparently it too proved ineffective. Chiarello's physician testified that he expected little progress in the case and that further surgery had been ruled out. Plaintiff's experts further testified that plaintiff continued to suffer from severe back pain, loss of sensation and dragging of the right foot, restriction of movement, and a right-sided limp
 
 
 [3]
 Plaintiffs make no claim that the court erred in discounting the award for future loss of earnings
 
 
 [4]
 The jury found that Thomas Chiarello, who was 35 years old at the time of the accident, had a life expectancy of 32 years and a work expectancy of 26 years. The jury also found a discount rate of 61/2 per cent for the present value of the dollar, and an inflation rate of 3 per cent, making a net discount factor of 31/2 per cent. Using the damage figures arrived at by the jury, the court computed the damage awards as follows:
 
 
 [1]
 Lost earnings ......................... $ 55,000.00
2. Loss of future
 earnings ............... $507,000.00
 Discounted by 3 1/2 per
 cent for 26 years .................... 329,362.00
3. Past pain and suffering ................ 138,500.00
4. Future pain and
 suffering .............. $230,000.00
 Discounted by 3 1/2 per
 cent for 32 years .................... 137,048.00
5. Medical expenses ........................ 10,000.00
 -----------
 Total ............................. $669,910.00
1. Past loss of consortium ............... $ 38,000.00
2. Future loss of
 consortium ............. $ 70,000.00
 Discounted by 3 1/2 per cent
 for 32 years .......................... 41,703.00
 -----------
 Total ............................. $ 79,703.00
 
 
 [5]
 Plaintiffs have argued that this issue is governed by Yodice v. Koninklijke Nederlandsche Stoomboot Maatschappij, 443 F.2d 76, 77 (2d Cir. 1971), cert. denied 411 U.S. 933, 93 S.Ct. 1902, 36 L.Ed.2d 393 (1973) and Rapisardi v. United Fruit Company, 441 F.2d 1308, 1312 n. 7 (2d Cir. 1971). However, the Yodice case merely contains dictum suggesting that awards for future pain and suffering need not be discounted. There is no suggestion that it is erroneous to discount such awards. The Rapisardi case said nothing on the matter at all, a footnote merely indicated that damage for future pain and suffering had not been discounted in that case
 Because the parties have not briefed the issue, we find this an inappropriate occasion to decide whether the discounting of damage awards in a diversity case is governed by state or federal law. See Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); cf. Spector v. Mermelstein, 485 F.2d 474, 481 (2d Cir. 1973); Julien J. Studley, Inc. v. Gulf Oil Corporation, 425 F.2d 947, 949 (2d Cir. 1969); Russell v. City of Wildwood, 428 F.2d 1176, 1180 (3rd Cir. 1970). The plaintiffs in this case were New York residents; defendants were both residents of New Jersey. Given this alignment and the fact that the accident took place in New Jersey, we may assume that a New York court would apply New Jersey law. See Neumeier v. Kuehner, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 286 N.E.2d 454 (1972); see also Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975) (per curiam); Klaxon Company v. Stentor Electric Manufacturing Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The parties have not revealed to us, and our research has failed to uncover, any New Jersey law governing the precise issue. Thus, even if we were here deciding what the New Jersey courts would hold on this issue, we would be engaged in a similar attempt to reach the correct result by looking to the decisions of other jurisdictions. See generally C. Wright, Law of the Federal Courts 238-41 (2d ed. 1970).
 
 
 [6]
 See Taylor v. Denver and Rio Grande Western Ry., 438 F.2d 351 (10th Cir. 1971); see generally Annot., 60 A.L.R.2d 1347, 1352-53 (1958)