**Jose ESPANA, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 385, Docket 79–6114.**

United States Court of Appeals, Second Circuit.

Argued Dec. 10, 1979.

Decided Feb. 1, 1980.

Paul C. Matthews, New York City, for appellant.

Leona Sharpe, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty., S. D. New York, Peter C. Salerno, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before MULLIGAN, OAKES and GUR-FEIN,* Circuit Judges.

OAKES, Circuit Judge:

In this case, appellant argues that he was awarded insufficient damages in his suit against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680. The appeal is from a judgment of the United States District Court for the Southern District of New York, Constance Baker Motley, Judge, in the total sum of $182,-

---

* Judge Gurfein heard the argument on December 10, 1979, but died unexpectedly shortly thereafter. He expressed agreement with this disposition of the case at the voting conference, however.

535.15.[1] The case arises from a traffic accident involving appellant's car and a small truck owned by the United States Government and operated by one of its employees.

Five claims are made on appeal: (1) that the district court's finding that appellant's earning capacity was $4,000 per year was clearly erroneous; (2) that the district court's finding that appellant suffered from a preexisting back condition affecting his ability to work was clearly erroneous; (3) that the district court's findings regarding appellant's life expectancy and work expectancy were clearly erroneous; (4) that the district court abused its discretion in failing to adjust its damage award by a factor to offset inflation; and (5) that the district court abused its discretion in denying appellant's request to reopen the proof after trial.

We find merit only in the claim involving the district court's finding of a shortened life expectancy. As to that issue we reverse and remand for further findings. Otherwise we affirm.

 With respect to appellant's earning capacity, although he had held a rigger's license issued by the City of New York, that license had expired in 1963, eleven years before the accident. Between 1963 and 1967 he worked on odd jobs as a painter. He then joined the National Maritime Union and worked as a seaman in "Group II" status for a total of 377 days in 1968 and 1969, but he was unable to qualify for "Group I" priority status. In 1970 and 1974, appellant attempted to secure addi-

tional work aboard a ship, bidding on relief assignments, but was unable to do so. He did some work in 1970 as a superintendent in an apartment building in exchange for a rent-free apartment and did some painting and waterproofing as well as working on his own houses in the early 1970s. He had no steady job, however, and in 1973 he worked for an apartment-management company refurbishing windows, for a total of eleven weeks. He did some more work for that company, beginning in March, 1974, and ending on the date of the accident. In the early 1970s, he bought one house with savings and the money he had earned as a seaman, and a second house out of the rental income from the first one, but the first house was awarded to his first wife upon the dissolution of their marriage, and he lost the second house by a mortgage foreclosure. He produced no W-2 forms or income tax returns or other proof of income for any of these years, including 1973, when he claimed he received income of $4,200, and 1974, when he claimed about $4,300. A letter from the apartment-management employer stated that as an independent contractor appellant had been paid a total of approximately $3,550 in 1974. Based on this evidence, we think that the district court's finding that he had not earned "more than $3,000 to $4,000 a year since 1970" was not clearly erroneous.[2]

As to appellant's preexisting back condition, there was ample evidence in the record that he had a degenerative back condition at some time prior to the accident. There were X-rays of his back taken in 1975 and

---

1. Initially, appellant was awarded $150,825.10, as follows:

| | |
|---|---|
| Past lost wages | $ 18,000.00 |
| Future lost wages | 25,852.80 |
| Past pain and suffering | 32,000.00 |
| Future pain and suffering | 46,968.00 |
| Past medical expenses | 13,339.90 |
| Future medical expenses | 14,090.40 |
| Damage to automobile | 574.00 |
| | $150,825.10 |

Ultimately, the court increased the award for past pain and suffering from $32,000 to $62,000 and increased the award for medical expenses by $1,710.05.

2. Appellant argues that the lost-wages awards should be based on his "earning capacity,"

rather than his actual earnings before the accident. He cites various authorities for the proposition that an accident victim who is unemployed, or employed part-time, may recover damages for the loss of his *full-time* earning capacity. E. g., Restatement (Second) of Torts § 924(b) comment; 2 F. Harper & F. James, The Law of Torts § 25.8. But this doctrine applies only to victims who, prior to the injury, have not earned as much as they could in the marketplace, e. g., a student or a housewife. Here, on the other hand, it was certainly relevant that appellant, despite his skills, was unable to find full-time employment before the accident. His lost earning capacity depends on the employment he was *actually* able to obtain. See id. at 1317.

1976 revealing osteoarthritic changes that were not directly associated with the trauma of the accident. There was also testimony that studies of appellant's spine showed osteoarthritis, scoliosis, and osteophytes, conditions that had taken many years to develop. While in our view the record did not support the district court's conclusion that his preexisting back condition had already, as of 1974, prevented him from engaging in regular work in the construction industry, this finding did not prejudicially affect the court's finding concerning appellant's work life expectancy. As we have noted, appellant's work before the accident was quite sporadic, and his income totaled only about $4,000 per year. The court below awarded that full amount as lost future earnings for eight years, making no reduction for this preexisting back condition.[3] The court did conclude that, absent, the accident, appellant's work life would still have ended after those eight years (when appellant reached age 60), but this conclusion did not depend on the court's unsupported belief that appellant was somewhat disabled before the accident. And the conclusion was certainly not clearly erroneous.

There was testimony to the effect that with some degenerative disc disease a patient may live through a normal life span without experiencing any symptoms, but there was also evidence, in the testimony of Dr. Shelton, that appellant had "significant wear and tear on his spine, which definitely occurred over a number of years and was not a direct result of the accident," that this was over and above the normal degenerative process to which everyone is subject, and that these changes were "gross" and "occur[red] much too early in life." Such evidence offers sufficient support for the court's conclusion that appellant could not have worked past age 60, although we might not have made such a finding ourselves on the record below.

■ For the purpose of awarding appellant future damages for pain and suffering and medical expenses, the district court found that his life expectancy was to age 65. Since mortality tables showed that the life expectancy of an average person of age 52 would be to age 74, this finding of shortened life expectancy significantly diminished the award for these two elements of future damages. Yet there is no evidence in the record, aside from the fact of appellant's back problems, to suggest that appellant's life expectancy was shorter than normal. We recognize the general principle that mortality tables, when admitted, do not constitute " 'absolute guides,' " but rather are "data to be taken into account in calculating a basis for the award of fair and reasonable damages in light of all the evidence." *City-Wide Trucking Corp. v. Ford*, 113 U.S.App.D.C. 198, 203, 306 F.2d 805, 810 (D.C. Cir. 1962) (citations omitted). But where, as here, a court reduces the life expectancy of an individual, there should be substantial other evidence to outweigh the probative value of the tables. *Cf. Buschbaum v. Hale*, 97 Ind.App. 219, 182 N.E. 93 (1932) (en banc); *Garton v. Powers*, 252 Mich. 442, 233 N.W. 373, 374 (1930) (mortality tables held conclusive absent controverting evidence). Here such evidence was lacking. Appellant's health was otherwise good. While we do not deny the possibility of a medical connection between severe back problems and life expectancy, we think it was improper here for the court to presume such a connection. Accordingly we remand for further findings in respect to appellant's life expectancy.

■ Appellant also argues that the trial court erred by not considering the impact of inflation and the diminished purchasing power of the dollar. *Cf. Feldman v. Allegheny Airlines, Inc.*, 524 F.2d 384, 387 (2d Cir. 1975) (discount rate adjusted by inflation). But here the district court discounted sums presently awarded for future medical expense and future pain and suffering at a rate of only 5%, when in fact interest rates at the time of trial were considerably higher. *See Dullard v. Berkeley Associates,*

---

3. Thus the district court did not, as appellant claims, disregard the rule that a tortfeasor "takes his victim as he finds him."

606 F.2d 890, 895 n. 3 (2d Cir. 1979). We think that this low discount rate amply takes inflation into account and is, if anything, generous.

■ Appellant's final point is that the district court should have permitted him to reopen the case to permit the introduction of evidence that his preexisting back condition had not been disabling. The court declined to do this, reasoning that the case had been pending for two years and the parties had had ample opportunity to assemble all of their evidence for trial. It also denied appellant's motion for a new trial, but amended its findings of fact to increase appellant's award for past pain and suffering by $30,000 and his award for past medical expenses by $1,710.05. Under all the circumstances, we think that appellant cannot complain.

Judgment affirmed except in respect to finding of appellant's life expectancy, as to which it is reversed and the cause remanded for further findings; no costs to either party.