BARRY WAYNE LAIRD, Plaintiff-Appellee and Cross-Appellant, v. ILLINOIS CENTRAL GULF RAILROAD COMPANY, Defendant-Appellant and Cross-Appellee.

Fifth District   No. 5—89—0250

Opinion filed February 4, 1991.

54

Eugene C. Menges, of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Belleville, and Edward M. Laine and Richard L. Meyer, both of Oppenheimer, Wolff & Donnelly, of St. Paul, Minnesota, for appellant.

Richard Shaikewitz and Samuel A. Mormino, Jr., both of Wiseman, Shaikewitz, McGivern, Wahl, Flavin & Hesi, P.C., of Alton, for appellee.

JUSTICE WELCH delivered the opinion of the court:

Plaintiff, Barry Wayne Laird, brought a two-count complaint, as amended, pursuant to provisions of the Federal Employers' Liability Act (FELA) (45 U.S.C. §51 *et seq.* (1976)), against defendant, Illinois Central Gulf Railroad Company, to recover for personal injuries suffered during the course of his employment with the defendant. Following a six-day trial, the jury returned verdicts against the defendant of $36,500 on count I and $670,000 on count II, representing a verdict of $1,340,000 reduced by a 50% comparative negligence finding. The circuit court of Madison County, Illinois, entered judgment on the verdicts by minute record on February 22, 1989. After denial of both plaintiff's and defendant's post-trial motions on April 7, 1989, both parties filed notices of appeal.

Defendant seeks reversal of the judgment in favor of plaintiff on count II on the grounds that the trial court erred in denying defendant's motion for directed verdict as to count II of plaintiff's complaint because plaintiff's failure to obtain an "off work slip" was proved to be the *sole* cause of his injury. In the alternative defendant prays that the entire judgment on both counts be reversed and the cause remanded to the court below for a new trial. Defendant claims that it is entitled to a new trial because of several evidentiary and instructional errors committed by the court below during the trial and because of the denial of its *forum non conveniens* motion on July 11, 1986. In addition, defendant claims that the trial court committed reversible error in connection with rulings related to admission and timing of evidence which placed defendant at a disadvantage and resulted in an unfair trial. Defendant further contends that the court erred in refus-

ing to strike a juror for cause and that certain remarks made by the judge to plaintiff's counsel exhibited a bias on the part of the court in plaintiff's favor. Finally, defendant claims that the cumulative effect of the several errors committed by the trial court is basis for reversal of the judgment.

Plaintiff cross-appeals from the finding of contributory negligence on his part with respect to count II of the complaint. In the alternative, plaintiff prays that the judgment be affirmed. We shall give a brief factual background for plaintiff's amended complaint and develop the remaining facts as they relate to each of the issues enumerated above.

Plaintiff began working for defendant railroad in 1970 at the age of 20. After undergoing a physical examination by a railroad physician which included an X ray taken of his back, plaintiff was found to be in good physical condition at the time he was accepted for employment. Plaintiff was hired as a trackman, a track maintenance position which requires a certain amount of heavy lifting. After approximately five years' employment, plaintiff achieved seniority within the union which entitled him to bid on foreman jobs for the railroad. Thereafter plaintiff alternated between trackman and foreman positions, according to successful bid. Plaintiff had only two minor injuries while employed by the railroad prior to August 17, 1982.

Count I of plaintiff's complaint involved back injuries which were suffered when plaintiff was operating a backhoe on August 17 and 18, 1982, at a site in Massac County near Metropolis, Illinois. Plaintiff alleged that the brakes on the backhoe were defective, that he received inadequate instruction on its operation, and that the type of equipment he was ordered to use to move the ballast and rock to even out the road was unsuitable. Plaintiff testified that he was pushing loose rock and dirt from the side of the tracks into a ditch along the tracks. As he drove the backhoe down the bank, he had to push hard with both foot brakes and pull up on the steering wheel in order to keep control of the backhoe. Plaintiff testified at the same time that there was a considerable amount of shaking and jerking while he was seated on the backhoe. Plaintiff had operated the vehicle on two prior occasions without difficulty but both instances involved flat terrain.

Plaintiff complained to his supervisor, J.C. Trout, that he had hurt his back on the second day of the backhoe assignment and filled out an accident report. He reported that he did not know the cause of his injury and did not want to see a doctor at that time. Plaintiff was assigned very light duty on August 19, 1982, because the pain in his back was worsening. On August 20, 1982, after plaintiff complained

of severe back pain, Trout drove plaintiff to the emergency room of a Paducah, Kentucky, hospital. Plaintiff was examined there by Dr. Burton Haley, a surgeon whose practice was centered around industrial surgery, specifically with the low back area. Dr. Haley had at one time been on the active staff at the Illinois Central Hospital. After the examination and an X ray taken of plaintiff's back, Dr. Haley found rotational scoliosis, and that muscle spasm in the back was the cause of the pain, for which he prescribed a muscle relaxant and analgesic. However, Dr. Haley found no indication of any neurological involvement in the back injury and decided to place plaintiff on a seven-day, 35-pound, light-duty work restriction. Defendant honored the light-duty restriction ordered by Dr. Haley. Haley's outpatient records indicate that he advised plaintiff that he could thereafter return to normal activity as tolerated.

Plaintiff returned to normal work that fall but testified that the pain had never entirely left. In December 1982, he decided to take his three-week vacation to let his back heal, and on December 2, 1982, made an appointment with Dr. Carey Campbell, a physician and neurological surgeon who practiced in Paducah, Kentucky. Dr. Carey observed a hereditary curvature of plaintiff's spine and, after range-of-motion testing on plaintiff's back, and strength, reflex and sensory testing on plaintiff's lower extremities, made a preliminary diagnosis that a central disc protrusion was the cause of plaintiff's recurring back problems. Dr. Carey ordered a CAT scan and recommended that plaintiff continue the stretching exercises recommended by Dr. Haley and the use of aspirin for pain. He again saw plaintiff on December 13, 1982, to review the results of the CAT scan which confirmed the earlier bulging disc with no nerve root entrapment diagnosis. Dr. Carey advised plaintiff that he could pursue normal activities as tolerated.

In January 1983, plaintiff was assigned to a gauging gang between Metropolis and Reevesville, Illinois. Gauging involves the measuring of the proper gauge or distance between the railroad tracks and if the track is "out of gauge," requires the removal of the spikes, realignment and respiking of the rails. The rail spikes are contained in 200-pound kegs and are lifted by two men. In addition, the gauging gang is required to lift certain equipment off the rails or trucks.

Plaintiff called Dr. Campbell's office on January 6, 1983, and asked the receptionist if he could get a six-week, leave-of-absence medical excuse from the doctor because he could not tolerate the work activity on the gauging gang. The receptionist asked him if he wanted to make an appointment but he declined. She told him that he

could not get a medical excuse if he did not come in to see the doctor, but made an appointment for plaintiff in April. Plaintiff also testified that the receptionist told him that Dr. Campbell only gave off-duty slips for his patients who had had back surgery.

Plaintiff informed Roger Davidson, the gauging gang supervisor, that he had a bad back and could not do the lifting the first day on the job and on two other occasions. Davidson told plaintiff that he did not need men to stand around and look and that if he could not do the work, he would find someone who could. Plaintiff understood Davidson's responses to mean that if he did not do the work he would be fired. Plaintiff testified that he injured his back lifting the 200-pound kegs of rail spikes and other heavy equipment in January 1983.

In February 1983, plaintiff returned to Dr. Haley complaining of extreme back pain. Dr. Haley believed that plaintiff's back pain was due to a combination of the abnormal curvature of his spine and the added work strain he had recently experienced. After an off-duty excuse was prescribed for a one-week period of time, Dr. Haley reexamined plaintiff and recommended a light-duty, 35-pound weight restriction for plaintiff to return to work. Because the railroad would not accept the weight restriction, plaintiff was taken off work. Haley referred plaintiff to Dr. Campbell for reevaluation and set up an appointment with Dr. French, an orthopedic surgeon also from the Paducah, Kentucky, area. Plaintiff kept his April 5, 1983, appointment with Dr. Campbell, who diagnosed degenerative disc disease with central protrusion at the lumbar-5 region, without nerve root entrapment. In June 1983, Dr. Haley referred plaintiff for examination by Dr. John Noonan, a Paducah, Kentucky, neurosurgeon. Dr. Noonan examined plaintiff on June 27, 1983, and diagnosed acute low back strain with some occasional recurrent pain. Because Dr. Campbell, Dr. French and Dr. Noonan all agreed that plaintiff could work without any specific restrictions, Dr. Haley authorized his return to work, even though he personally believed that plaintiff should be restricted from heavy lifting.

Plaintiff testified that he was able to work but could barely stand the pain. Upon the recommendation of his father in October 1983, plaintiff saw Dr. David Schreiber, a neurophysician, who diagnosed a herniated lumbar disc with nerve root damage. Dr. Schreiber gave plaintiff an off-duty slip until April 1984. Thereafter Dr. Schreiber released him to return to work because plaintiff was concerned about paying his bills. After only one day on the job plaintiff returned to Dr. Schreiber's care, complaining of extreme pain. Dr. Schreiber put plaintiff on disability because he could not handle the

pain involved with the work in putting in railroad ties.

After his application for disability was approved by the railroad, plaintiff began receiving railroad disability payments of $1,149 per month. He testified that he is unable to do any of his former activities and spends his days reading or watching TV. Plaintiff was 38 years old at the time of the trial.

The first issue we will address is the error alleged by defendant in the trial court's refusal to grant its *forum non conveniens* motion in 1986. Plaintiff's complaint was filed in May 1984 wherein he alleged that defendant railroad operated and did business in Madison County, Illinois. Both plaintiff and defendant were at the time represented by different firms of attorneys. Plaintiff's present attorney entered his appearance in August 1984 and amended the complaint to add count II in November 1985. Defendant's present attorneys entered their appearance in January 1986 and simultaneously filed a *forum non conveniens* motion seeking dismissal or transfer of the complaint.

At this point in time the court had heard certain motions, an answer had been filed, the complaint had been amended to add count II and discovery had been initiated. Defendant's motion alleged that the proper intrastate forum for this action was in Massac County, where plaintiff lived and the accidents occurred. Moreover, defendant claimed that, except for Dr. Schreiber, who practiced in Madison County, the remaining treating physicians practiced in Paducah, Kentucky, which is close to Massac County, and that possible occurrence witnesses resided or worked in Massac County. Defendant submitted the 1983 Annual Report to the Supreme Court of Illinois upon which it based an allegation of congested court dockets in Madison County versus Massac County and claimed undue burden and inconvenience involved in trial of this cause in Madison County. Thus, defendant claimed under the factors set forth in *Torres v. Walsh* (1983), 98 Ill. 2d 338, 456 N.E.2d 601, the action should be transferred to Massac County.

Plaintiff argued in response to the motion that damages, not liability, was the key issue in the case and plaintiff had at this time been receiving medical treatment for his injuries from Dr. Schreiber for 2½ years and so the majority of his medical records were located in Madison County. Moreover, plaintiff argued that the filing of this motion nearly two years after the complaint was filed was not timely. After argument of counsel and submission of authority, the court below denied defendant's motion on July 11, 1986. The record does not indicate, however, the rationale used by the court in denying defendant's motion. On appeal, the parties raise similar

arguments to those raised before the trial court.

●■ ■ The rationale underlying the doctrine of *forum non conveniens* is that it promotes fairness and efficient judicial administration. (*Espinosa v. Norfolk & Western Ry. Co.* (1981), 86 Ill. 2d 111, 117, 427 N.E.2d 111, 114.) Under the doctrine, a court may decline to exercise jurisdiction of a case whenever it appears that there is another forum with jurisdiction of the parties in which trial can be more conveniently had. (*Bland v. Norfolk & Western Ry. Co.* (1987), 116 Ill. 2d 217, 223, 506 N.E.2d 1291, 1294.) Illinois courts recognize the application of this doctrine to intrastate as well as interstate *forum non conveniens* cases. (*Torres v. Walsh* (1983), 98 Ill. 2d 338, 353, 456 N.E.2d 601, 607.) In *Torres* our supreme court outlined the factors to be taken into consideration in deciding whether to apply the doctrine:

> "the availability of an alternate forum, the access to sources of proof, the accessibility of witnesses, the relative advantages and obstacles to obtaining a fair trial, the congestion of the court dockets, and the convenience of the parties. We also caution our trial courts that unless those factors strongly favor the defendant, then the plaintiff should be allowed to exercise his choice in deciding in what forum to bring the case when venue is proper.
>
> If there are sufficient factors that favor the plaintiff's choice of forum, then the defendant's inconvenience should not be considered, provided venue is proper. For unless the balance strongly favors the defendant, then the plaintiff should be able to exercise his statutory right to choose his forum." *Torres*, 98 Ill. 2d at 351, 456 N.E.2d at 607.

■■ The determination of whether the facts of a particular case warrant the allowance of a motion to dismiss under the doctrine of *forum non conveniens* is entrusted to the sound discretion of the circuit court. (*Barnes v. Southern Ry. Co.* (1987), 116 Ill. 2d 236, 247, 507 N.E.2d 494, 500.) In reviewing a decision of a circuit court in denying a motion to decline jurisdiction based on a contention that the forum chosen by plaintiff is not a convenient one in which to litigate a particular case, the decision of the circuit court will not be reversed on review absent an abuse of judicial discretion in weighing the relevant considerations. (*Barnes*, 116 Ill. 2d at 247-48, 507 N.E.2d at 500.) The trial court also has broad discretion in determining whether particular circumstances require transfer of a cause under *forum non conveniens* and such decision regarding transfer will not be reversed on review absent a showing of abuse. *Bland*, 116 Ill. 2d at 223, 506 N.E.2d at 1293.

■ While the filing of an entry of appearance and answer in an interstate case has been held not to result in a waiver of the right to file a motion to dismiss for *forum non conveniens*, there are outside limits to how long a party can wait before filing its motion to dismiss or decline jurisdiction based on this doctrine. (*Walker v. Iowa Marine Repair Corp.* (1985), 132 Ill. App. 3d 621, 477 N.E.2d 1335, 1339, citing *Herbert v. Louisville & Nashville R.R. Co.* (1985), 130 Ill. App. 3d 624, 474 N.E.2d 848.) In *Herbert* this court upheld on review the denial of defendant's motion to decline jurisdiction under *forum non conveniens* where the defendant waited 16 months after the filing of the complaint, after having answered and completed discovery, and after the court had ruled on a substantive issue denying defendant's motion to dismiss. The court in *Walker* concluded that the *Herbert* decision was grounded in considerations of fundamental fairness and sensible and effective judicial administration and stood for the proposition that, where the defendant delays in filing this motion, it will properly be denied where the court finds a deleterious impact on the other party. Moreover, this court concluded that the same rule of fundamental fairness should apply to cases seeking an intrastate transfer, because the *Torres* court adopted interstate *forum non conveniens* principles in whole. (*Walker*, 132 Ill. App. 3d at 629, 477 N.E.2d at 1340.) The *Walker* court concluded that, where the defendant filed its motion three weeks after it appeared and no discovery had yet been initiated, no inherent unfairness or prejudice could result to plaintiff, and accordingly, the defendant did not lose or waive its right to seek a transfer. (*Walker*, 132 Ill. App. 3d at 629, 477 N.E.2d at 1340.) In contrast with the *Herbert* decision, the supreme court has held that a circuit court abused its discretion in denying the defendant's motion to dismiss based on the doctrine of *forum non conveniens* on grounds that the motion filed more than five months after the defendant had filed its answer was untimely, where the delay in filing the motion was the result of the plaintiff's delay in answering interrogatories until compelled to do so by the circuit court. (*Barnes*, 116 Ill. 2d at 249-50, 507 N.E.2d at 501.) It is our conclusion that the fundamental fairness rule recommended by the *Walker* court should be the guideline for courts faced with dilatory *forum non conveniens* motions. In each case the court should examine the circumstances involved with the delay and determine the existence, if any, of prejudice to the other party should the motion be granted.

■ Although the trial court in the instant case gave no rationale for its denial of defendant's *forum non conveniens* motion, we do not believe the court abused its discretion in making that decision. We

further do not believe that the denial of defendant's motion resulted in its receiving an unfair trial in Madison County. The record supports denial in that defendant's motion was untimely and inherent unfairness to plaintiff could have resulted from dismissing or transferring the case to Massac County two years after the case had been filed and extensive discovery had been undertaken. Moreover, defendant was in possession of witnesses' names and other information upon which it based this motion long before the motion was filed. Moreover, under the *Torres* factors the trial court was bound to defer to plaintiff's choice of forum because the factors did not strongly favor the defendant. Plaintiff's main treating physician and medical expert practiced in Madison County. Each of the other treating physicians lived in Kentucky, not Illinois, and defendant presented the testimony of certain of those physicians by evidence deposition. Another of defendant's main occurrence witnesses, Roger Davidson, who also lived outside of Illinois and was therefore not subject to subpoena in Massac or Madison County, provided testimony by evidence deposition. Moreover, no resulting unfairness at trial was apparent to defendant in that it chose to present by evidence deposition the testimony of its medical expert, who practiced in St. Louis, Missouri, a locale proximate to Madison County, and its equipment expert, from Wisconsin, would have been equally available for live testimony in Madison or Massac County. Finally, a jury view of the premises, which defendant argues on appeal was precluded by trial in Madison County, was relevant only to count I of the complaint, and, given that the trial took place more than six years after the incident, the photographs introduced as evidence by defendant which were taken more proximately in time to the incident alleged in count I more accurately described the scene for the jury.

●■ The next issues we shall discuss are whether the trial court erred in denying defendant's motion for directed verdict on count II of the amended complaint and whether the court erred in denying plaintiff's post-trial motion to reverse the jury finding of 50% comparative negligence. We address these issues together because both involve an analysis of the burden of proof under the FELA. The Federal Employers' Liability Act makes railroads liable in damages to any employee suffering "injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." (45 U.S.C. §51 (1976).) Our review of the jury's verdict on this question must be made in ac-

cordance with Federal law and thus will be set aside only where there is a complete absence of probative facts to support the conclusion reached. (*Duffield v. Marra, Inc.* (1988), 166 Ill. App. 3d 754, 762, 520 N.E.2d 938, 944.) Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable. *Duffield*, 166 Ill. App. 3d at 763, 520 N.E.2d at 944.

■ Defendant asserts that it is well established that an FELA jury verdict in favor of a plaintiff should be reversed if the sole proximate cause of any injury is the plaintiff's own negligence, particularly where a clear violation of a company rule, order or policy is involved, citing as authority for this assertion *Unadilla Valley Ry. Co. v. Caldine* (1928), 278 U.S. 139, 73 L. Ed. 224, 49 S. Ct. 91, *Davis v. Kennedy* (1924), 266 U.S. 147, 69 L. Ed. 212, 45 S. Ct. 33, and *Helton v. Thomson* (1941), 311 Ill. App. 354, 36 N.E.2d 267, *cert. denied* (1942), 316 U.S. 688, 86 L. Ed. 1760, 62 S. Ct. 1278, *rehearing denied* (1942), 317 U.S. 704, 87 L. Ed. 562, 63 S. Ct. 24. However, in a later United States Supreme Court FELA decision following amendment of the statute in 1939, the Court reversed a decision of the Missouri Supreme Court which found as a matter of law that a case should not have been sent to the jury where plaintiff's conduct was the sole cause of his mishap. (*Rogers v. Missouri Pacific R.R. Co.* (1957), 352 U.S. 500, 1 L. Ed. 2d 493, 77 S. Ct. 443.) The jury in the *Rogers* case had been instructed to return a verdict for defendant if it was found that negligence of the plaintiff was the sole cause of his mishap. The verdict in favor of plaintiff, the court concluded, represented a finding that such was not the case but that plaintiff's injury resulted at least in part from defendant's negligence. The court found error in the Missouri Supreme Court's interpretation of the governing standard of proof under the statute in order to send the case to the jury; that the injury would not have occurred but for the negligence of the employer and that the test of whether there is a causal connection is that absent the negligent act the injury would not have occurred. The court in *Rogers* made the following pertinent comment to an issue similar to that raised by defendant in the instant case:

> "But that would mean that there is no jury question in actions under this statute, although the employee's proofs support with reason a verdict in his favor, unless the judge can say that the jury may exclude the idea that his injury was due to causes with which the defendant was not connected, or, stated another way, unless his proofs are so strong that the jury, on grounds of

probability, may exclude a conclusion favorable to the defendant. That is not the governing principle defining the proof which requires a submission to the jury in these cases. * * *

Under this statute the test of a jury case is simply whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought. It does not matter that, from the evidence, the jury may also with reason, on grounds of probability, attribute the result to other causes, including the employee's contributory negligence. Judicial appraisal of the proofs to determine whether a jury question is presented is narrowly limited to the single inquiry whether, with reason, the conclusion may be drawn that the negligence of the employer played *any part at all* in the injury or death. Judges are to fix their sights primarily to make that appraisal and, if that test is met, are bound to find that a case for the jury is made out whether or not the evidence allows the jury a choice of other probabilities." (Emphasis added.) *Rogers,* 352 U.S. at 505-07, 1 L. Ed. 2d at 499-500, 77 S. Ct. at 448-49.

Defendant's reliance on *Helton, Unadilla,* and *Davis* is misplaced. While it is true that if the injury results *solely* from the conduct of the plaintiff there can be no recovery, this rule does not apply, even where there is evidence that plaintiff violated a safety regulation, in situations where there is also evidence that defendant was negligent. (See *Hildebrand v. Baltimore & Ohio R.R. Co.* (1963), 41 Ill. App. 2d 217, 224-25, 190 N.E.2d 630, 632-33.) The court in *Hildebrand* distinguished the situation in the *Helton* case, where there was a complete absence of any evidence from which it could be inferred that the defendant employer was guilty of any negligence contributing to the employee's injury. Moreover, in *Unadilla* and *Davis,* the decedents' negligence in disregarding orders was the proximate and efficient cause of the accidents and there was no proof of negligence on the part of other employees, as had been alleged by the plaintiffs therein. (*Rocco v. Lehigh Valley R.R. Co.* (1933), 288 U.S. 275, 279, 77 L. Ed. 743, 746, 53 S. Ct. 343, 344.) Moreover, these cases were decided prior to the enactment of the 1939 amendments to the FELA which abrogated the defense of assumption of the risk in all cases where injury proximately resulted from negligence of the carrier. 45 U.S.C. §54 (1976); *Tiller v. Atlantic Coast Line R.R. Co.* (1943), 318 U.S. 54, 67, 87 L. Ed. 610, 617, 63 S. Ct. 444, 451.

■ We believe the record more than adequately supports a determination by the trial court that defendant's negligence played some

part in plaintiff's injury as alleged in count II. The general foreman of the gauging gang and managerial employee of defendant admitted under cross-examination that if a man had told him he was sick or had pain in his back, he would allow him to rest or go home depending on how badly he was hurt. He also admitted that plaintiff had complained to him that he had a bad back and was not able to do any heavy lifting or moving. He also admitted telling plaintiff that, unless he was under a doctor's care, he would have to do some heavy lifting, and that if he did not do the work, he would be replaced. Plaintiff was required to help move 200-pound spike kegs and 150-pound spike pullers. A railroad has a duty to assign employees to work for which they are reasonably suited and will breach that duty if it negligently assigns an employee to perform work beyond his capacity. (*Ybarra v. Burlington Northern, Inc.* (8th Cir. 1982), 689 F.2d 147, 151, quoting *Fletcher v. Union Pacific R.R. Co.* (8th Cir. 1980), 621 F.2d 902, 909.) Accordingly, we hold that the trial court did not err in denying defendant's motion for directed verdict on that count.

●■■ On the other hand, the record also supports a finding by the jury that plaintiff was contributorily negligent. Under the FELA contributory negligence is no bar to relief; damages are simply reduced in proportion to the amount of negligence attributable to the employee. (*Duffield*, 166 Ill. App. 3d at 762, 520 N.E.2d at 944.) Plaintiff contends, however, that defendant's theory that plaintiff's failure to obtain an off-duty or light-duty medical excuse was the sole cause of his injury is equivalent to a defense of assumption of the risk, which as noted above, has not been recognized as a defense in FELA actions since the 1939 amendments to the statute. Where an employee discovers that his place of employment is unsafe but continues to work in that unremedied, dangerous environment because his only alternatives are a transfer with cut in pay, change of employment or purchase of safety equipment, his conduct does not constitute contributory negligence but constitutes assumption of the risk, which is no defense to recovery under the FELA. See *Del Raso v. Elgin, Joliet & Eastern Ry. Co.* (1967), 84 Ill. App. 2d 344, 228 N.E.2d 470.

Assumption of the risk and contributory negligence are closely related concepts, and a clear distinction must be made between the two in order to avoid jury confusion and protect the plaintiff from being charged with assumption of the risk under a different name. (*Hamrock v. Consolidated Rail Corp.* (1986), 151 Ill. App. 3d 55, 62-63, 501 N.E.2d 1274, 1279.) Assumption of the risk will not bar recovery where plaintiff merely performs a dangerous job with knowledge of the danger and without a safe alternative available to him, while

contributory negligence involves some negligent act or omission by the plaintiff other than his knowledgeable acceptance of a dangerous condition. (*Hamrock*, 151 Ill. App. 3d at 63, 501 N.E.2d at 1279.) Plaintiff contends the record indicates that he attempted to obtain the medical slip but was unable to and was therefore forced into a position of either doing the work he was incapable physically of performing or losing his job. However, our review of the record indicates that plaintiff had an opportunity to make an appointment with Dr. Carey, Dr. Haley or some other doctor if his back pain had not abated, but chose instead not to do so. Instead, plaintiff worked at this heavy-lifting job from early January 1983 until he finally saw Dr. Haley on February 23, 1983. Moreover, there was testimony that the foreman Davidson offered to take plaintiff to the doctor but that he refused. While defendant is not blameless in causing the injury or reinjury to plaintiff's back, plaintiff's delay in seeking medical attention could reasonably have been found to have been a lack of due care on his part and a contributing cause to his injury.

The next issue we will address is whether the trial court erred in rejecting defendant's offers of proof regarding plaintiff's ·receipt of disability annuity payments pursuant to the Railroad Retirement Act (45 U.S.C. §231 *et seq.* (1976)). Defendant urges that by failing to allow evidence as to disability payments payable to or received by plaintiff for use in determining damages, the court committed reversible error. Plaintiff urges that the collateral source rule, upon which the trial court based its decision to exclude this testimony, is still the law and mandated exclusion of the testimony contained in the offer of proof. However, defendant argues that the collateral source rule should not be applied in FELA cases where the disability payments and FELA wage-loss claims compensate for the same element of loss. In the alternative, defendant argues that given the concept behind the collateral source rule, that part of the disability benefits attributable to direct contributions by defendant should be offset from the FELA wage-loss part of the damages awarded plaintiff. Moreover, defendant contends that section 5 of the FELA (45 U.S.C. §55 (1976)) supports its claim for an offset of the disability contribution made by defendant. Finally, defendant argues that the collateral source rule should not control the exclusion of this evidence where plaintiff "opened the door" to the relevancy of the disability payments.

●■■ In cases arising under the FELA, all procedural matters, including the admissibility of evidence, are governed by the law of the forum. (*Avance v. Thompson* (1943), 320 Ill. App. 406, 418, 51 N.E.2d 334, 340, *rev'd on other grounds* (1944), 387 Ill. 77, 55 N.E.2d 57,

*cert. denied* (1944), 323 U.S. 753, 89 L. Ed. 603, 65 S. Ct. 82.) However, a Federal substantive right cannot be lessened or destroyed by a State rule of procedure. (*Castro v. Chicago, Rock Island & Pacific R.R. Co.* (1980), 83 Ill. 2d 358, 415 N.E.2d 365, *cert. denied* (1981), 452 U.S. 941, 69 L. Ed. 2d 956, 101 S. Ct. 3086.) Under the collateral source rule, benefits received by the injured party from a source wholly independent of, and collateral to, the tortfeasor will not diminish damages otherwise recoverable from the tortfeasor. (*Wilson v. Hoffman Group, Inc.* (1989), 131 Ill. 2d 308, 320, 546 N.E.2d 524, 530.) Based on this rule, evidence that plaintiff received payments while disabled, due to an accident, in the form of workers' compensation or disability insurance payments or gratuitous payments from the employer is not admissible in a civil suit by plaintiff for damages and the receipt of such payments should not preclude plaintiff from recovery of lost wages. (*Fear v. Smith* (1989), 184 Ill. App. 3d 51, 59, 539 N.E.2d 1297, 1302.) The justification for the collateral source rule is that the wrongdoer should not benefit from the expenditures made by the injured party or take advantage of contracts or other relations that may exist between the injured party and third persons. *Wilson,* 131 Ill. 2d at 320, 546 N.E.2d at 530.

●■ The United States Supreme Court has held that in an FELA action it is improper to consider, in mitigation of damages, disability payments made to the plaintiff under the Railroad Retirement Act (45 U.S.C. §228b(a)(4) (1976)). (*Eichel v. New York Central R.R. Co.* (1963), 375 U.S. 253, 11 L. Ed. 2d 307, 84 S. Ct. 316.) In *Eichel* the defendant offered evidence that the plaintiff was receiving $190 per month in disability pension payments under the Railroad Retirement Act for the purpose of impeaching the plaintiff as to his motive for not returning to work and as to the permanency of his injuries. The Court noted that the benefits received under the Railroad Retirement Act, which is substantially a social security act for employees of common carriers, are not directly attributable to the contributions of the employer, so they cannot be considered in mitigation of the damages caused by the employer. (*Eichel,* 375 U.S. at 254, 11 L. Ed. 2d at 308-09, 84 S. Ct. at 317.) Under the Federal Rules of Evidence, the court of appeals had determined that the district court made a legal relevance error in failing to admit this evidence because its substantial probative value outweighed the risk of undue prejudice through being considered by the jury for the incompetent purpose of a set-off against lost earnings. The Supreme Court disagreed:

"It has long been recognized that evidence showing that the defendant is insured creates a substantial likelihood of misuse.

Similarly, we must recognize that the petitioner's receipt of collateral social insurance benefits involves a substantial likelihood of prejudicial impact. We hold therefore that the District Court properly excluded the evidence of disability payments." (*Eichel*, 375 U.S. at 255-56, 11 L. Ed. 2d at 309, 84 S. Ct. at 317.)

In a more recent FELA case, the Ninth Circuit Court of Appeals, relying on the strict exclusionary rule announced in *Eichel* and its progeny, held that evidence of disability pension payments was inadmissible either as bearing on the extent of the injury or to show a motive for not returning to work. *Sheehy v. Southern Pacific Transportation Co.* (9th Cir. 1980), 631 F.2d 649.

Defendant claims, however, that the Railroad Retirement Act disability annuity payments are directly attributable to contributions of the employer and therefore not collateral because the railroad contributes approximately two-thirds of the annual total contributions under the present funding provisions, citing 26 U.S.C. §§1500 and 1520. Defendant also offered the affidavits of James Hansen and Earl Oliver, an accounting employee and former personnel officer of defendant, to show that it had contributed $29,443.75 to the Railroad Retirement Act fund on behalf of plaintiff, with plaintiff contributing $13,645.25, and that the disability annuity payments plaintiff receives are funded by the contributions made by plaintiff and defendant while plaintiff was a railroad employee. While defendant also notes that a number of States have abrogated the collateral source rule in various types of civil litigation and both Federal and State courts have become increasingly critical of the collateral source rule, defendant has not brought to our attention any FELA cases which distinguish the holding of the Supreme Court in *Eichel*. Defendant urges that this court eliminate application of this judicially created doctrine. This we decline to do.

●■ The collateral source rule generally does not allow plaintiff to recover the value of benefits conferred by defendant. (*Feeley v. United States* (3d Cir. 1964), 337 F.2d 924, 927.) However, the rationale behind application of the collateral source rule has been that there is no double recovery as long as plaintiff has contributed to the original source of the payments received. (*Thomas v. Penn Central Co.* (W.D. Pa. 1974), 379 F. Supp. 24, 25.) The policy considerations for the collateral source rule and difference between the above two situations were explained by the court in *Haughton v. Blackships, Inc.* (5th Cir. 1972), 462 F.2d 788:

"[A]n employer-tortfeasor who voluntarily undertakes to indemnify itself against liability by payment into a fund for that pur-

pose, should not be penalized by permitting the plaintiff a double recovery of his benefits under the fund as well as his full measure of damages. On the other hand, where the employer-tortfeasor makes payment directly or indirectly into a fund established for an independent reason, or where such payment by the employer should be considered in the nature of a fringe benefit or deferred compensation, the employer should not be entitled to benefit by setting off such income in mitigation of his responsibility as a tortfeasor." *Haughton*, 462 F.2d at 791.

●■ ■ In distinguishing a fringe benefit from a benefit intended to indemnify an employer against future liability, courts must look to the purpose and nature of the fund and of the payments and not merely at their source. (*Brady v. National R.R. Passenger Corp.* (D. Conn. 1989), 714 F. Supp. 601, 602.) According to Oliver's affidavit, offered by defendant, the Railroad Retirement Act provides for payment of a disability annuity or occupational disability annuity to a railroad employee who is medically certified as permanently disabled for his or her regular railroad occupation at age 60 as a result of personal injury or illness if the employee has at least 120 months of creditable railroad service or at any age if the employee has at least 240 months of creditable railroad service. (See 45 U.S.C. §§231(a)(1)(iv), (a)(1)(v) (1976).) Railroad Retirement Act disability payments are considered pension benefits which amount to compensation for services previously rendered because it is the length of service and monthly wage rather than the extent of disability that determines the amount of the annuity. (See *Bonner v. Ry. Employee's Mutual Association* (1946), 119 Mont. 63, 66, 170 P.2d 400, 402.) We therefore consider the disability annuity payments made to plaintiff to be collateral source payments and conclude, accordingly, that the court below did not err in disallowing evidence about these payments.

●■ Moreover, we disagree with defendant that section 5 of the FELA provides the vehicle for it to offset from damages awarded to plaintiff the amount of benefits attributable to its contributions to the Railroad Retirement Act on plaintiff's behalf. This provision states as follows:

"Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this act, shall to that extent be void: *Provided*, That in any action brought against any such common carrier under or by virtue of any of the provisions of this act, such common carrier may set off therein any sum it has contributed or paid to any insurance, re-

lief benefit, or indemnity that may have been paid to the injured employee or the person entitled thereto on account of the injury or death for which said action was brought." (45 U.S.C. §55 (1976).)

Benefits paid to an injured employee are exempt from setoff under section 55 when they are deemed to have come from a "collateral source," independent from the employer/tortfeasor. (*Brady*, 714 F. Supp. at 602.) Because we have determined that the disability annuity payments made to plaintiff came from a "collateral source," there can be no offset from damages warranted pursuant to section 55.

Finally, we will consider whether plaintiff, in fact, "opened the door" to the subject of his receipt of disability pension payments thus entitling defendant to cross-examine on the subject. Defendant cites *Lange v. Missouri Pacific R.R. Co.* (8th Cir. 1983), 703 F.2d 322, and *Gladden v. P. Henderson & Co.* (3d Cir. 1967), 385 F.2d 480, in support of this proposition. Defendant claims that the testimony of Dr. Schreiber, plaintiff's treating physician, that in March of 1984 plaintiff was having financial difficulties and wanted to return to work, that plaintiff would need to look into vocational rehabilitation, and that the Lairds were running out of money to live on in June 1984 made admissible the evidence of collateral income propounded in the offer of proof. Moreover, defendant cites the direct reference of Dr. Schreiber to a letter of disability he gave plaintiff so that he could apply for disability benefits and testimony that plaintiff was depressed and having marital problems for the proposition that plaintiff created a misimpression in the minds of the jury members that he had applied for disability but that it had been denied. Notwithstanding this testimony by Dr. Schreiber, plaintiff maintains that the Supreme Court's decision in *Eichel* and the *Sheehy* case, cited above, require exclusion of the evidence covered by defendant's offer of proof.

The plaintiff in *Lange* had testified on direct examination that he returned to work immediately after undergoing back surgery because he had to support his family and had no savings or disability income to fall back on. Defense counsel was thereafter permitted to elicit testimony from plaintiff that he applied for and had received workers' compensation benefits. No error based on the collateral source rule was found by the Eighth Circuit Court of Appeals:

"The evidence concerning Lange's receipt of workmen's compensation benefits was relevant to test the credibility of plaintiff's assertion that he had to return to work immediately after the surgery because he had no disability income. [Citations.] It was also necessary to protect the full range of inquiry allowed

by cross-examination, a fundamental part of the adversary system." (*Lange*, 703 F.2d at 324.)

Similarly, in *Gladden* the plaintiff on direct examination had testified that he returned to work and had not visited his treating physician again because he had fallen behind in the payment of his bills and wanted to catch up on them and support his family. The Third Circuit distinguished the situation in *Eichel* wherein the defendant had attempted to introduce prejudicial evidence of disability pension payments because it was relevant to the extent and duration of plaintiff's disability and not to impeach plaintiff's credibility following affirmative testimony about disability payments on direct examination. (*Gladden*, 385 F.2d at 483.) The Third Circuit affirmed the action of the district court in allowing defendant to cross-examine plaintiff for the narrow purpose of testing the credibility of plaintiff's assertion. *Gladden*, 385 F.2d at 484.

●■ In the instant case defendant was not seeking to cross-examine plaintiff for testimony *he* had made about having no source of income. Our review of the offer of proof defendant made following Dr. Schreiber's direct examination and its memorandum of law regarding admissibility of evidence concerning the disability payment cited therein indicates that defendant was not seeking to impeach plaintiff concerning the receipt of the disability payments, but was attempting to affirmatively introduce evidence as to the amount of the disability payments, evidence which could impact on the amount of damages he was entitled to under the FELA. Thus, the limited purpose authorized by *Lange* and *Gladden* did not apply and the trial court did not err in denying the offer of proof.

We will next consider whether the trial court committed reversible error in failing to instruct the jury that damages awarded for future pain and suffering should be reduced to present value. Defendant maintains that Federal law controls where a substantive issue such as damages is involved, and therefore, the Illinois Pattern Jury Instruction offered by plaintiff and accepted for instruction of the jury should not have been given. Instead, defendant argues, its jury instruction number 7, tendered but refused by the court, should have been given. This instruction stated:

"In computing the damages arising from future pain and suffering, you must not simply multiply the damages by the length of time you have found they will continue. Instead, you must determine the present cash value of the future pain and suffering. 'Present Cash Value' means the sum of money needed now, which, when properly invested, will equal the amount necessary

to compensate plaintiff for his pain and suffering in the future."

Defendant urges us to adopt the precedent established in the Second Circuit Court of Appeals requiring the discounting of future nonpecuniary losses by the jury, citing a recent Jones Act case, *Oliveri v. Delta Steamship Lines, Inc.* (2d Cir. 1988), 849 F.2d 742. Although the *Oliveri* case held that awards for nonpecuniary losses should be discounted by the fact finder, the court recognized that other Federal circuits and numerous State courts, including Illinois, considering this issue have all agreed that these awards should not be discounted. (*Oliveri*, 849 F.2d at 750-51, citing, *inter alia, Hall v. Chicago & Northwestern Ry. Co.* (1953), 349 Ill. App. 175, 192-93, 110 N.E.2d 654, 661-62, *rev'd on other grounds* (1955), 5 Ill. 2d 135, 125 N.E.2d 77.) *Oliveri* also analyzed the conflict within the Second Circuit itself concerning the need for discounting damages for future nonpecuniary losses, noting the earlier *Yodice* rule that discounting future wages was required but the award for future pain and suffering need not be discounted when it is in the form of a lump sum. (*Oliveri*, 849 F.2d at 749-50, citing *Yodice v. Koninklijke Nederlandsche Stoomboot Maatschappij* (2d Cir. 1971), 443 F.2d 76, 77.) In addition, the *Oliveri* court implied that if it were not obliged to follow precedent on this issue within the circuit, it would be inclined to accept the views of the other circuits and reject any discounting of future nonpecuniary losses. *Oliveri*, 849 F.2d at 751.

●■ There is a distinction between discounting awards for loss of future earnings and discounting awards for future pain and suffering, as the Second Circuit noted in *Oliveri*:

"[A]n award for lost future earnings *** is the jury's estimate from specific evidence of the actual amounts that would have been received by the plaintiff over the course of his working years. Since those dollars will be received now, rather than in the years they would have been earned absent the injury, it makes sense to discount them to present value. ***

With pain and suffering, however, *** the jury is not determining the precise amount of dollars the plaintiff would have received in future years. On the contrary, the jury is invited to select some general sum that the plaintiff should receive now as compensation for the pain and suffering he will endure in future years. Normally, that sum is a round number, determined without any precise calculation." (*Oliveri*, 849 F.2d at 749.)

The *Oliveri* court concluded that the fact finder could, in choosing that lump-sum figure, arrive at an appropriately discounted award

without any precise mathematical adjustment. (*Oliveri*, 849 F.2d at 751.) Thus, the *Oliveri* case fails to support defendant's argument that its jury instruction number 7 should not have been refused.

Finally, this court considered and rejected the identical issue posed by defendant in the instant case in *Wilson v. Norfolk & Western Ry. Co.* (1982), 109 Ill. App. 3d 79, 440 N.E.2d 238, and specifically found that the FELA did not require an instruction of the jury to reduce its award of damages for future pain and suffering to present worth. (*Wilson*, 109 Ill. App. 3d at 96, 440 N.E.2d at 251.) No precedential authority has been uncovered by defendant or by our own independent review which reverses or distinguishes our holding in the *Wilson* case. Moreover, we are unpersuaded by defendant's argument in favor of following the Second Circuit's holding in *Oliveri*, an equivocal authority at best, and hold that the trial court did not err in refusing defendant's jury instruction number 7.

We will next consider defendant's claim of reversible error in connection with three rulings made by the trial court related to the admission and timing of evidence. Defendant argues that the rulings put it at a disadvantage and resulted in an unfair trial.

The first ruling defendant claims as error involved its unsuccessful attempt to cross-examine plaintiff about his count II being an "after-thought," filed only after his deposition had been taken two years after suit was filed. Defendant argues that this evidence was admissible because the failure to prosecute or assert a claim is relevant to show that a claim is not valid, citing 2 Wigmore, Evidence §284 (Chadbourn rev. 1972, Supp. 1989). Defendant further claims that its "after-thought" theory espoused in the offer of proof would have assisted it in demonstrating that the lifting injuries alleged in count II were not acts of negligence on its part. Moreover, in light of plaintiff's failure to obtain an off-duty slip or fill out an injury report in January or February 1983, defendant argues plaintiff did not consider the incidents as negligence on its part as well.

However, plaintiff argues in response that the authority cited for defendant's position pertains only to the *failure* rather than delay in asserting a claim. Moreover, plaintiff contends the liberal rule with regard to amendment of pleadings (see Ill. Rev. Stat. 1987, ch. 110, par. 2—616), and points out that the scope of defendant's offer of proof involved questions concerning plaintiff's trial strategy, an area arguably protected by the work product privilege.

●■ Given that it is the province of the lawyer to define for his client when a set of facts may constitute a cause of action, we fail to see the merit in defendant's argument. Moreover, we decline to set a

precedent for the proposition that amendments to complaints to add separate causes of actions could constitute negative evidence thereof, given section 2—616 of the Civil Practice Law (Ill. Rev. Stat. 1989, ch. 110, par. 2—616). Finally, defendant fails to show that it was in any way prohibited from asking plaintiff directly about this "after-thought" theory because plaintiff was never asked the question "when was count II filed," and defendant was allowed to argue this theory in both its opening and closing statement to the jury.

Second, defendant argues that the trial court erred in allowing plaintiff to use the evidence deposition of Roger Davidson, whose deposition was taken by defendant, in plaintiff's case in chief. Davidson lived in Tennessee and was no longer employed by defendant and informed both parties that he would not voluntarily testify in the matter in Illinois. Plaintiff sought to introduce certain damaging testimony he elicited on cross-examination for the proposition that Davidson refused to acknowledge plaintiff's complaints about his back and threatened to fire plaintiff if he refused to do the work. Defendant objected, insisting that the entire deposition be read and that it intended to introduce the deposition into evidence during its case. The court required the entire transcript be read into evidence but allowed plaintiff to do so during his case. Defendant argues that Supreme Court Rule 212(b)(3) (107 Ill. 2d R. 212(b)(3)) required a showing by plaintiff that he had exercised reasonable diligence in attempting to secure the deponent and as the plaintiff did not make this showing, the court erred in allowing plaintiff to offer the deposition into evidence during his case. Plaintiff contends that given Davidson's position about refusing to testify voluntarily, he did all that was required to be done by attending Davidson's evidence deposition in Memphis, Tennessee.

Rule 212 provides in pertinent part:

"(a) *** Discovery depositions *** may be used only:

***

(2) as an admission made by a party or by an officer or agent of a party in the same manner and to the same extent as any other admission made by that person;

* * *

(b) *** All or any part of other evidence depositions may be used for any purpose for which a discovery deposition may be used, and may be used by any party for any purpose if the court finds that at the time of the trial:

* * *

(3) the party offering the deposition has exercised reasonable diligence but has been unable to procure the attendance

of the deponent by subpoena ***.

(c) *** If only a part of a deposition is read or used at the trial by a party, any other party may at that time read or use or require him to read any other part of the deposition which ought in fairness to be considered in connection with the part read or used." (107 Ill. 2d Rules 212(a)(2), (b)(3), (c).)

A showing that a deponent resided outside the State at the time the deposition was taken raises a presumption of continuance of residence in the other State and shows that the deponent is not amenable to subpoena. The deponent in *Kelley* was shown by the statements of counsel and the deposition itself to have resided outside of the forum State at the time of the deposition. (*Powers v. Kelley* (1967), 83 Ill. App. 2d 289, 227 N.E.2d 376.) The court in *Kelley* found that no showing that the attendance of the absent witness could not have been procured by the use of reasonable diligence was necessary in view of the presumption of the deponent's continued residence in the foreign State, and that the burden shifted to appellant to show a change in residence. (*Kelley*, 83 Ill. App. 2d at 297, 227 N.E.2d at 380-81.) In the instant case there was no claim made by defendant that Davidson had moved from Tennessee into Illinois at the time of the trial and was thus amenable to subpoena. Moreover, this deposition was taken December 22, 1988, less than two months before the jury trial herein. Therefore, we cannot say that the court abused its discretion in allowing plaintiff to introduce the portions of Davidson's deposition which he contended constituted admissions made by defendant's agent during his case. Moreover, by requiring plaintiff to read the entire transcript at that time rather than the portions he sought to introduce, the trial court reduced whatever prejudicial effect may have resulted from introduction of the evidence during plaintiff's case.

Third, defendant contends that the trial court improperly limited defendant's clarification of J.C. Trout's testimony. Plaintiff called Trout, who was plaintiff's supervisor at the time of the incident alleged in count I, as an adverse witness pursuant to section 2—1102 of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, par. 2—1102). Plaintiff questioned Trout about the unevenness of the terrain in support of his theory in count I that the terrain was unsuitable for the operation of the backhoe. Defendant attempted to introduce as evidence certain site photographs during its examination of Trout so that the photographs could be shown to the jury. The court ruled that the photographs were inadmissible at this time because the offer was made during plaintiff's case. Defendant was allowed to have Trout au-

thenticate and testify about the photographs and they were admitted into evidence during defendant's case.

● ■ ■ Defendant cites *Oko v. Rogers* (1984), 125 Ill. App. 3d 720, 466 N.E.2d 658, for the proposition that when a party chooses to present an adverse witness as part of his case, the opposing party is provided the opportunity to clarify the adverse testimony. Defendant contends that the trial court committed reversible error when it unfairly limited defendant's clarification. We have reviewed the *Oko* case and fail to see how it supports defendant's contention. Moreover, Supreme Court Rule 233 provides in pertinent part:

> "The parties shall proceed at all stages of the trial, including *** the offering of evidence, and the examination of witnesses, in the order in which they appear in the pleadings unless otherwise agreed by all parties or ordered by the court."

(107 Ill. 2d R. 233.) The order of proof lies largely in the discretion of the court, and a party cannot complain of an abuse of discretion so long as he has an opportunity to introduce his evidence. (Hunter, Trial Handbook for Illinois Lawyers §14.3, at 163 (6th ed. 1989), citing *City of Sandwich v. Dolan* (1892), 141 Ill. 430, 31 N.E. 416.) We therefore find no abuse of discretion or prejudice suffered by defendant because it was able to admit the photographs into evidence during its case in chief.

Defendant next contends that the trial court's errors when viewed cumulatively, and particularly when combined with the following list of additional alleged errors, deprived defendant of a fair trial:

> (1) The trial court improperly refused to strike a juror for cause;
>
> (2) the trial court made improper off-the-record suggestions to plaintiff's counsel;
>
> (3) the trial court improperly refused to instruct the jury that a violation of defendant's safety rules is evidence of the plaintiff's negligence;
>
> (4) the trial court improperly refused defendant's tendered instructions to the effect that defendant was not a guarantor or insurer and that the FELA should not be confused with a workers' compensation case;
>
> (5) the trial court committed error in refusing to instruct that future wage loss should be based on work-life expectancy and not life expectancy; and
>
> (6) the trial court committed reversible error in refusing to

give defendant's instruction number 10, which provided that the amount of the award could not include punitive damages or attorney fees.

●■ With regard to item number one, whether a challenge for cause should be allowed rests within the sound discretion of the trial court, and its determination will not be set aside unless it is against the manifest weight of the evidence. (*People v. Harris* (1967), 38 Ill. 2d 552, 556, 232 N.E.2d 721, 723.) We have reviewed the record and conclude that the court below did not abuse its discretion in denying the challenge for cause. We do not believe, based on our review of the *voir dire* exam of this prospective juror, that defendant met its burden of proving bias in favor of plaintiff because the juror's *father* had at one time been represented by plaintiff's attorney. Moreover, we note from the record that defendant exercised one of its peremptory challenges to exclude the juror whom it had previously challenged for cause. The exercise of a peremptory challenge by means of which a juror is excluded is generally deemed to waive an error committed by the trial court in previously ruling on a challenge of such juror for cause. 47 Am. Jur. 2d *Jury*, §218 (1969).

●■ Second, defendant alleges that the trial judge made off-the-record suggestions concerning defendant's safety manual, which suggestions were later used by plaintiff in his closing argument, and improperly assisted plaintiff's counsel in formulating objections to defendant's offered jury instruction number 10. Defendant contends that this conduct violates Supreme Court Rules 62 and 63, governing the conduct of judicial officers. Section A of Rule 62 provides:

"A. A judge should respect and comply with the law and should conduct himself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary." (107 Ill. 2d R. 62(A).)

Rule 63 provides in pertinent part:

"A. Adjudicative Responsibilities.

\* \* \*

(4) A judge should accord to every person who is legally interested in a proceeding, or his lawyer, full right to be heard according to law, and, except as authorized by law, shall not permit *ex parte* or other communications concerning a pending or impending proceeding." (107 Ill. 2d R. 63(A)(4).)

Only where the judge's conduct or remarks are such as would ordinarily create prejudice in the minds of the jury do they constitute reversible error. (*Piechalak v. Liberty Trucking Co.* (1965), 58 Ill. App. 2d 289, 208 N.E.2d 379.) We note that both of the alleged communications took

place outside of the presence of the jury. We therefore fail to see how these allegations of judicial misconduct, which were not objected to by counsel during the trial, tended to deprive defendant of a fair trial.

Third, defendant contends that its non-Illinois Pattern Jury Instruction number 6 should have been given. This instruction tendered by defendant provided:

> "If you find that Plaintiff violated a safety rule of the Defendant and that this violation contributed in whole or in part to the accident, you may consider this violation as evidence of negligence on the part of the Plaintiff, and reflect this finding in the manner explained elsewhere in these instructions. If you find that the Plaintiff violated a rule of the company designed to prevent injuries from occurring in the manner in which the Plaintiff was injured, and that this violation was the sole cause of Plaintiff's injuries, then you must find in favor of the Defendant."

Defendant contends that the proof supported instruction of the jury that plaintiff violated safety regulations by failure to report the defective backhoe and failure to obtain a light-duty slip from his doctor, and that these safety violations were the sole cause of plaintiff's injury.

●■ Given our previous discussion of the *Rogers* case and the standard in FELA cases that a case must be sent to the jury where evidence of employer negligence played any part at all in plaintiff's injury, we believe that instruction number 6, tendered by defendant, would have unduly confused the jury. If plaintiff's action or failure to act was the *sole* cause of his injury, then a directed verdict would have been appropriate, making this instruction moot. As we also noted in our determination, the trial court did not err in denying defendant's motion for a directed verdict on this issue because there was proof in the record of negligence on the part of defendant. Moreover, plaintiff's instruction number 10 (Illinois Pattern Jury Instructions, Civil, No. 10.03 (3d ed. 1990)) (hereinafter IPI Civil 3d), which the court gave to the jury, properly instructed them about plaintiff's duty to use ordinary care for his own safety and that plaintiff's contributory negligence would reduce his total amount of damages in proportion to the amount of his negligence. The trial court should not give an instruction if the proposition contained therein is fully covered in other instructions. (*Lasko v. Meier* (1946), 394 Ill. 71, 67 N.E.2d 162.) We therefore find no error because the court refused to give defendant's jury instruction number 6.

●■ The fourth example of error allegedly made by the trial court involved the refusal to give defendant's tendered non-IPI numbers 4 and 5. Instruction number 4 proposed that the duty of reasonable care did not mean that the employer is a guarantor or insurer of the safety of

the place to work. Instruction number 5 provided that this FELA case should not be confused with a workers' compensation case under which an employer pays for the injury of an employee regardless of negligence or fault on the part of the employer, and that plaintiff may not recover unless it is first shown that his injury resulted in whole or in part from the defendant's negligence. Plaintiff's instruction 21 (IPI Civil 3d No. 160.02), given to the jury without objection, set forth the FELA standard of care on the part of the railroad and its agents and provided that plaintiff's contributory negligence would not bar his recovery but would diminish his damages in proportion to the amount of his negligence. Plaintiff's instruction 24 (IPI Civil 3d No. 160.7 Modified), given to the jury, provided the standard of care of the railroad to provide the plaintiff with reasonably safe and suitable machinery with which to do his work. Plaintiff's instruction 25 (IPI Civil 3d No. 160.8 Modified), given to the jury without objection, provided that the railroad has a duty to provide the plaintiff with a reasonably safe place in which to do his work. Given these instructions, the jury was not misinformed that plaintiff was entitled to absolute security or that negligence or fault on the part of the employer was not required to be shown. We therefore believe defendant's tendered instructions numbers 4 and 5 would have unduly confused the jury and the court below did not err in refusing to give them.

●■ Defendant's fifth contention of error involves the court's refusal to give its tendered jury instruction number 11. This instruction, purportedly based on the FELA and Illinois law, provided that for purposes of determining loss of future earnings the jury should base the loss on work-life expectancy rather than life expectancy. Plaintiff's instruction number 18 (IPI Civil 3d No. 34.04 Modified) provided in pertinent part as follows:

"With respect to a loss of future earnings you may consider that some persons work all their lives and others do not; that a person's earnings may remain the same or may increase or decrease in the future. According to the table of mortality in evidence, the life expectancy of a person aged 38 years is 35.8 years. This figure is not conclusive. It is the average life expectancy of persons who have reached the age of 38. It may be considered by you in connection with other evidence relating to the probable life expectancy of the plaintiff in this case, including evidence of his occupation, health, habits, and other activities, bearing in mind that some persons live longer and some persons less than the average."

The modification to IPI Civil 3d No. 34.04 involved addition of the para-

graph from IPI Civil 3d No. 34.01 concerning loss of future earnings. The "Notes on Use" following IPI Civil 3d No. 34.01 recommend that if mortality tables are in evidence, IPI Civil 3d No. 34.04 should also be used. Thus, plaintiff's instruction number 18 was consistent with IPI Civil 3d.

Moreover, we do not consider plaintiff's instruction number 18 to be inconsistent with the proposition that future wage loss should be based on work-life expectancy. Plaintiff's instruction number 18 gives a discretionary rather than mandatory instruction with respect to use of life expectancy in computation of loss of future earnings. This discretion is consistent with the cases cited by defendant in support of the claim of error which teach that it is the province of the fact finder to determine the length of plaintiff's working life based on the evidence, which for some will be aged 65 or less, and for others could continue until their death. We therefore find no error in refusing to give defendant's instruction number 11.

●■ Defendant's seventh contention of error involves the court's refusal to give its tendered jury instruction number 10 regarding punitive damages and attorney fees. This was the instruction to which defendant alleged the trial court assisted plaintiff's counsel in objecting:

"THE COURT: Number 10, I'm sure you object to this, Mr. Shaikewitz.

Mr. Shaikewitz: I do object.

THE COURT: I'm going to show that refused."

It is readily apparent from a review of the pleadings, the transcript, and the jury instructions given that this instruction should not have been given. Plaintiff never directly, or by implication in his argument to the jury, requested either punitive damages or attorney fees as part of his requested relief. There was no error in refusing defendant's instruction number 10.

●■ Because we have found no error or abuse of discretion in any of the issues raised herein by defendant, its contention that the cumulative effect of the alleged errors deprived it of a fair trial is without merit. Accordingly, the judgment of the circuit court of Madison County is affirmed.

Affirmed.

CHAPMAN and HARRISON, JJ., concur.